1     BARRETT S. LITT, SBN 45527
      E-Mail: blitt@kmbllaw.com
2     RONALD O. KAYE SBN 145051 _
      E-Mail: rok@kmbllaw.com
3     Kaye, McLane, Bednarski & Litt, LLP
4     234 Colorado Boulevard, Suite 230
      Pasadena, California 91101
5     Telephone: (626) 844-7660
      Facsimile: (626) 844-7670
6

7     MICHAEL S. RAPKIN, SBN 67220
      E-Mail: msrapkin@gmail.com
8     SCOTT B. RAPKIN, SBN 261867
      E-Mail: scottrapkin@rapkinesq.com
9     Rapkin & Associates, LLP
10    723 Ocean Front Walk
      Venice, California 90291
11    Telephone: (310) 319-5465
      Facsimile: (310) 319-5355
12

13    Attorneys for Plaintiffs

14            UNITED STATES DISTRICT COURT

15           CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17   Star Salazar, Anthony Oliver, Hilda Alarid, Louis Kaelin, Dana Kaelin, Qiana Goss, et al. <br><br> Plaintiffs, <br><br> vs. <br><br> County of Los Angeles, County of San Bernardino, County of Riverside, and County of Orange, Does 1-10, et al., <br><br> Defendants. | CASE NO 2:15-cv-09003-MWF-JC <br><br> FIRST AMENDED CLASS ACTION COMPLAINT <br><br> 1. 42 U.S.C. §§201 et seq.. <br> 2. 42 U.S.C. §1983 <br><br> **JURY TRIAL DEMANDED** |

26

27

28

## I.      PREFACE

1.      This lawsuit was originally filed in November 2015, and contained supplemental state law damages and injunctive relief claims. It was never served. When it was filed, the state law Govt. Code § 910 claims had been filed but not yet rejected. It was Plaintiffs' original intention to amend that complaint, prior to serving it, to include information regarding rejection of the Govt. Code claims. On reflection, Plaintiffs' counsel determined to dismiss all state law claims without prejudice in order to eliminate any argument or litigation over the propriety of having filed a complaint containing state law claims before they were rejected, even if not served. That dismissal of all state law claims without prejudice in this case was filed on February 17, 2016, and this First Amended Complaint contains no state law claims.

2.      Because the state law claims are inextricably interwoven with the federal claims, the County defendants have now either expressly or by operation of law denied said claim, and the state law claims are important to the final resolution of the issues in this case, Plaintiffs' decision to dismiss the state law claims without prejudice was accompanied by the decision to refile the case in a new complaint that contained both federal and state law claims. To distinguish that case from this case, the lead plaintiff in the new case is Aaron Araiza.  Because the federal claims in the new case have a statute of limitations start date of two years from the date of filing, the federal claims in this case are being maintained since they have an earlier statute of limitations start date. The two complaints are being served together.

## II.      INTRODUCTION

3.      Tens of thousands of California jail inmates and their families, most of whom are not convicted but facing charges, are held hostage to grossly unfair and excessive phone charges, forcing them to pay these charges in order to maintain contact with their loved ones who are incarcerated. These charges are

1  nothing but money making schemes by Counties and their jails to force family

2  members desperately trying to maintain contact with their inmate husbands,

3  parents and children to pay for totally unrelated jail expenses or give up their

4  primary lifeline of communication. Los Angeles, San Bernardino, Riverside and

5  Orange Counties run among the largest jails in the US, and essentially extort

6  monies from mostly poor and minority families trying to get by and stay in contact

7  with loved ones. They do so by establishing extortionate and outrageous

8  "commissions" to be paid by this vulnerable population to fund the jails.

9      4.    The Federal Communications Commission ("FCC") has recently

10  taken decisive action, after many years of deliberation. On October 2, 2015, "to

11  rein in the excessive rates and egregious fees on phone calls paid by some of

12  society's most vulnerable: people trying to stay in touch with loved ones serving

13  time in jail or prison." FCC Press Release.https://www.fcc.gov/document/fcc-

14  takes-next-big-steps-reducing-inmate-calling-rates. The FCC observed that

15  "contact between inmates and their loved ones has been shown to reduce the rate

16  of recidivism," but "high inmate calling rates have made that contact unaffordable

17  for many families, who often live in poverty." Reducing the cost of calls

18  "measurably increases the amount of contact between inmates and their loved

19  ones, making an important contribution to the criminal justice reforms sweeping

20  the nation." As Federal Communications Commissioner Mignon Clyburn has said,

21  this system "is inequitable, it has preyed on our most vulnerable for too long,

22  families are being further torn apart, and the cycle of poverty is being perpetuated."

23  This lawsuit, and others soon to be filed, seek to put an end to this unconscionable

24  practice by California counties.

25      5.    This action specifically concerns the role of local California counties

26  and jails, which collect unconscionable "commissions" as payment for granting the

27  exclusive telephone link through which inmates in their various jails can

28  communicate with the outside world, including family, friends, bailbondsmen,

legal counsel and others (hereafter collectively "Call Recipients"). That these counties fully understand the injustice they are inflicting, even while they continue it, is captured by the statement of former Los Angeles County Supervisor, Zev Zaroslavsky, "Everyone's making a lot of money at the expense of inmates' families. They're in jail. They're paying their debt to society. *That doesn't give us the right to fleece them*." (emphasis added).[1]

6. The phone systems are commonly referred to as an Inmate Calling System ("ICS"), which is the term used by the FCC when addressing them. The Counties enter into exclusive contracts granting to telecommunications companies, the most common of which is Global Tel*Link Corporation ("GTL") (hereafter collectively the "telecommunications companies"), the exclusive right to establish a phone system through which inmates – both pretrial and convicted – may communicate with Call Recipients, who have to establish a pre-paid account with the telecommunications companies and are charged unreasonable, unjust and exorbitant rates, the lion's share of which are in turn paid to the Counties as what are euphemistically referred to as "commissions." Said telecommunications companies are common carriers within the meaning of the Federal Communications Act. Under this scheme, the Counties and their jails receive millions of dollars per year (LA County alone is **guaranteed $15 Million annually**), which comprises the majority of the collected charges.

7. Notably, the State of California provides a stark contrast to the practices of the County Defendants. California's practice establishes that there is no meaningful basis to contend that exorbitant phone rates and commissions are necessary to cover the costs of the service.  In August 2007, California began to phase out commissions at its state prisons, ultimately eliminating them in 2010. Prior to August 2007, calls from California's prisons were $1.50 + $.15/minute for

---

[1] See David Lazarus, *Gouging L.A. County Inmates With High Phone Fees*, The

1  local calls, $2.00 + $.22/minute intrastate and $3.95 + $.89/minute interstate.

2  Now, with no commissions, current per minute rates for intrastate and local calls

3  are $0.13 and $0.09, respectively, and the cost of an intrastate 15 minute call is

4  $2.03.  Thus, the same 15-minute intrastate call without the commissions is

5  61.70% less than when the State received commissions ($3.30 differential in the

6  post commission fee divided by $5.03 total fee when commissions were used).

7     8.     These payments, euphemistically called "commissions," are an

8  integral part of a scheme by virtue of which the Counties and the

9  telecommunications companies conspire and share in charging Call Recipients

10 unjust, unreasonable and exorbitant rates to communicate with inmates, as well as

11 fees that are illegal under California law. The rates charged to inmates and their

12 families, friends and associates are far greater than those paid for ordinary

13 telephone service.

14    9.     These unjust, unreasonable, excessive and unlawful fees work a

15 terrible hardship on inmates, and their family, friends and associates who bear the

16 brunt of the charges. Most inmates of County jails are relatively poor and lack

17 significant financial resources; they are disproportionately people of color,

18 especially African-American and Latino; many suffer from serious mental illness.

19 Their families, friends and associates similarly are relatively poor, people of color

20 and lack significant financial resources. The charges at issue in this complaint

21 unlawfully put the burden on inmates' families, friends and associates of paying

22 for County services and costs that are rightfully the responsibility of the taxpayers

23 and society at large. These practices limit contact between inmates and their

24 families, friends, associates and other Call Recipients due to their exorbitant costs,

25 resulting in greater isolation for inmates and reduced support, and undermining the

26 objective of returning inmates to the community with greater and stronger ties.

27

28

Los Angeles Times, September 8, 2014.

1   Many people are forced to limit their contact with inmates far more than they

2   would wish because of the cost.

3       10.    The current Defendants are Los Angeles County, San Bernardino

4   County, Riverside County and Orange County. Although they are separate

5   Defendants, the claims against each County are the same with the only differences

6   being the particular Class Members and possibly the identity of the

7   telecommunications companies with which they contract. Although the Complaint

8   identifies Defendant Counties, the Sheriff's Department of each such County is a

9   part of that County and, as the term "County" or "County Defendant" is used in

10  this Complaint, it encompasses the Sheriff's Department of each Defendant County

11  as well as the County at large.

12      11.    Plaintiffs are divided into classes by County, as follows: Los Angeles

13  County ("Class One"), San Bernardino County ("Class Two"), Riverside County

14  ("Class Three"), and Orange County ("Class Four"). Each class is represented by

15  separate Named Plaintiffs on behalf of a proposed class of similarly situated Call

16  Recipients and/or inmates on a County by County basis. Plaintiffs seek damages

17  and injunctive relief, including refunds of the unlawful sums they paid described in

18  this Complaint.

19      12.    Defendants' wrongful conduct involves relatively small amounts of

20  damages for each class member. Defendants are carrying out a scheme to

21  deliberately collect unlawful but small sums of money from large numbers of Call

22  Recipient and Inmate Class Members. Their conduct unlawfully burdens inmate

23  Class Members' ability to communicate with loved ones and persons important to

24  their legal situation, and Call Recipient Class Members' ability to communicate

25  with loved ones and persons important to their legal situation. Each class brings

26  this action on their own behalf and on behalf of all others similarly situated.

27      13.    The gravamen of this complaint concerns the County Defendants'

28  liability for 1) charging and receiving, in concert with the telecommunications

5

companies, unjust and unreasonable rates and other conduct in violation of the Federal Telecommunications Act (hereafter the "FCA"), 47 U.S.C. §151, *et seq.*, specifically in violation of §201(b) of that act; and 2) violation of 42 U.S.C. §1983 (for depriving inmates and their families and associates their First Amendment rights of association, and unconstitutionally conditioning their use of the phones on such outrageous charges in violation of the Fifth Amendment's due process and unlawful takings provisions.

### III.   JURISDICTION AND VENUE

14.   Plaintiffs present federal claims for relief under 47 U.S.C. §201(b) and 42 U.S.C. §1983. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343.

15.   Plaintiffs' claims arise out of acts of the Defendants in their respective named counties, all of which are located within the Central District of California, and all of whose acts, as they relate to the allegations in this complaint, involve the same basic legal issue. Accordingly, venue is proper within the Central District of California.

16.   All Plaintiffs – whether inmates to allow communications with whom a third party ICS account was in the past or present established, or will in the future be established, and Call Recipients who establish the ICS account (defined more fully in ¶1, *supra*) – have standing because both inmates and Call Recipients suffered an injury in fact. Inmates, even if they did not pay or contribute to payment for the ICS, were and will be injured because the unlawful conduct alleged herein restricted their practical ability to communicate with the outside world. Call Recipients were injured both because the unlawful conduct alleged herein restricted their practical ability to communicate with inmates and because they paid for unlawful fees and charges.

## IV.    PARTIES

### A.    PLAINTIFFS

#### 1.    CLASS ONE PLAINTIFFS (LOS ANGELES COUNTY)

17.    Plaintiff, Star Salazar, is the wife of Ronny Salazar, a male inmate at MCJ in Los Angeles, California starting in 2011 and continuing to this date. Together, the Salazars have two children.  Mrs. Salazar directly bore the cost of the charges for telephone calls made by Mr. Salazar during his incarceration; therefore, she qualifies as the payor of said fees.

18.    Plaintiff Anthony Oliver was a male inmate at the Men's Central Jail (MCJ) in Los Angeles, California from March 27, 2014 to April 8, 2015. Mr. Oliver directly bore the cost of some of the third party charges incurred by his family and friends because he often times provided the funds that, in turn, were used to pay the telephone companies' charges. He, therefore, qualifies as the payor of said fees.

#### 2.    CLASS TWO PLAINTIFFS (SAN BERNARDINO COUNTY)

19.    Plaintiff, Hilda Alarid, is the mother of Aaron Araiza, who has been a male inmate at the West Valley Detention Center ("WVDC") in Rancho Cucamonga, California on multiple occasions in 2015, with the latest custodial term starting September 3, 2015 during his incarceration. . Mrs. Alarid directly bore the cost of the charges for telephone calls made by Mr. Araiza; therefore, she qualifies as the payor of said fees.

#### 3.    CLASS THREE PLAINTIFFS (RIVERSIDE COUNTY)

20.    Plaintiffs, Louis and Dana Kaelin, husband and wife, are the parents of Todd Kaelin, a male inmate at the Larry D. Smith Correctional Facility in Banning, California, starting in 2013 and continuing to this date.Mr. and Mrs. Kaelin directly bore the cost of the charges for telephone calls made by their son. Therefore, Claimants Louis Kaelin and Dana Kaelin qualify as the payors of said fees. Mr. and Mrs. Kaelin are residents of Riverside County.

1

*4.*  *CLASS FOUR PLAINTIFFS (ORANGE COUNTY)*

2        21.    Plaintiff, Qiana Goss, is the common law wife of Peter Lee Bohanon,

3   a male inmate at the Orange County Central Jail in Santa Ana, California from

4   February, 2015 until and including October 16, 2015.  Together, they have three

5   children.  Ms. Goss directly bore the cost of the charges for telephone calls made

6   by Mr. Bohanon; therefore, she qualifies as the payor of said fees.

7        **B.**    **DEFENDANTS**

8        22.    Defendant County of Los Angeles (hereafter "County") is a public

9   entity organized and existing under the laws of the State of California. The Los

10  Angeles County Sheriff's Department (hereafter "LASD") is a public entity within

11  the meaning of California law, and is an agency of the County of Los Angeles. The

12  County is sued in its own right for a County and/or LASD policy, practice or

13  custom which caused Plaintiffs' injuries in violation of one or more federal rights,

14  and is sued as well under California state law for violation of Govt. Code §11135.

15       23.    Defendant County of San Bernardino (hereafter "County") is a public

16  entity organized and existing under the laws of the State of California. The San

17  Bernardino County Sheriff's Department (hereafter "SBCSD") is a public entity

18  within the meaning of California law, and is an agency of the County of San

19  Bernardino. The County is sued in its own right for a County and/or SBCSD

20  policy, practice or custom which caused Plaintiffs' injuries in violation of one or

21  more federal rights, and is sued as well under California state law for violation of

22  Govt. Code §11135.

23       24.    Defendant County of Orange (hereafter "County") is a public entity

24  organized and existing under the laws of the State of California. The Orange

25  County Sheriff's Department (hereafter "OCSD") is a public entity within the

26  meaning of California law, and is an agency of the County of Orange. The County

27  is sued in its own right for a County and/or OCSD policy, practice or custom

28

1  which caused Plaintiffs' injuries in violation of one or more federal rights, and is
2  sued as well under California state law for violation of Govt. Code §11135.

3       25.     Defendant County of Riverside (hereafter "County") is a public entity
4  organized and existing under the laws of the State of California. The Riverside
5  County Sheriff's Department (hereafter "RCSD") is a public entity within the
6  meaning of California law, and is an agency of the County of Riverside. The
7  County is sued in its own right for a County and/or RCSD policy, practice or
8  custom which caused Plaintiffs' injuries in violation of one or more federal rights,
9  and is sued as well under California state law for violation of Govt. Code §11135.

10      26.     Plaintiffs are ignorant of the true names and capacities of Defendants
11  sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants
12  by such fictitious names. Plaintiffs will give notice of this complaint, and of one
13  more DOES' true names and capacities, when ascertained. Plaintiffs are informed
14  and believe, and based thereon allege that Defendants DOES 1 through 10 are
15  responsible in some manner for the damages and injuries hereinafter complained
16  of. Because there are numerous Defendants, each of which may have Doe
17  Defendants that should appropriately be named in the Complaint, ten Doe
18  Defendants may be inadequate. Plaintiffs limit the Doe Defendants to ten because
19  L.R. 19-1 so requires, but Plaintiffs reserve the right to seek leave to add Doe
20  Defendants.

21      27.     The individual Defendants from all Defendant Counties (although not
22  currently named, but who may be named in the future) may at times be referred to
23  herein collectively as the "Individual Defendants." Such Individual Defendants
24  from each Defendant County may at times be referred to herein collectively as the
25  "_____ County Individual Defendants" (e.g., "Los Angeles County Individual
26  Defendants").

27      28.     Upon information and belief, Plaintiffs further allege that, at all times
28  relevant herein, the Individual Defendants participated in, implemented,

supervised, approved, and/or ratified the illegal acts undertaken on behalf of each County Defendant with regard to which they are named as Individual Defendants.

29.     Plaintiffs are informed and believe, and thereupon allege that, at all times relevant herein, the Individual Defendants, and each of them, were the agents, servants and employees of the respective County Defendant with regard to which they are named as Individual Defendants, and were acting at all times within the scope of their agency and employment with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of state law.

30.     When the phrase "_____ County Defendants" is used in this Complaint with regard to a particular County, it refers not only to that County, but to the Doe Defendants and to any Individual Defendants who may be named with regard to that County.

## V.     CLAIMS OF CLASS REPRESENTATIVES

### A.     CLASS ONE PLAINTIFFS AND CIRCUMSTANCES (LOS ANGELES COUNTY)

31.     Ronny Salazar is a Latino who, while housed at Men's Central Jail ("MCJ"), was recently convicted and who is, and for the forseeable future will be, incarcerated at MCJ.  He has a wife, Star Salazar, with whom he has two children. Because his family lives in Sacramento, telephone calls are the only practical means for Mr. Salazar to communicate with his wife and children. Both of his parents are also living and they want to keep close contact with Mr. Salazar. Because the calls he makes to his family are so expensive, Mr. Salazar is limited in the number of calls he can make. The cost of these calls is a substantial burden on his family. With limited funds, his family has numerous other expenses including rent, car payment, clothing, and food. Under these circumstances, Mr. Salazar's family does the best that it can. The family, particularly Star Salazar, Ronny's wife, has already paid several thousand dollars to GTL, often times for calls that

1  are broken up or cut short due to GTL's defects, resulting in the need to re-call and

2  incur another connection fee. Mr. Salazar depends on his wife, Star, to be his

3  support and voice of reason as he fights his case and endures the effects of years of

4  incarceration.

5      32.    After Mr. Salazar was incarcerated, Star Salzar, who is African-

6  American, moved to Sacramento so that her father could assist in helping her care

7  for her two young children. She is obtaining her degree at a local community

8  college and is training to become a radiologist. She has always been a beacon of

9  moral support and love, first providing for her mother, who was born without arms,

10  and now for her husband, who is locked away in a notoriously decrepit jail, despite

11  both Mr. and Mrs. Salazar's strong belief in his innocence. Both she and Mr.

12  Salazar are scared about what their future holds. She wants Mr. Salazar to stay in

13  contact with their children so they know their father. Since Mr. Salazar's arrest in

14  2012, Mrs. Salazar has deposited thousands of dollars for her and her children to

15  speak on the telephone with their husband and father. She wishes to have more

16  frequent phone calls, but she cannot afford the cost. Plaintiff Star Salazar brings

17  this suit on her own behalf and on behalf of a class of similarly situated persons,

18  defined elsewhere in this Complaint.

19      33.    Anthony Oliver is white, and was a male inmate at the Men's Central

20  Jail (MCJ) in Los Angeles, California from March 27, 2014 to April 8, 2015.

21  While incarcerated, he made use of phone accounts through GTL that third party

22  family, friends or associates (including attorneys) established to communicate with

23  him. In some instances, he provided funds to such third parties to pay for such ICS

24  phone access. Plaintiff Oliver was ultimately released after being held for several

25  months, and was acquitted of his charges by a jury. Thus, Mr. Oliver was neither

26  convicted of, nor pled to, any charge on which he had been held. Plaintiff Oliver

27  brings this suit on his own behalf and on behalf of a class of similarly situated

28  persons, defined elsewhere in this Complaint.

**B.    CLASS TWO PLAINTIFFS AND CIRCUMSTANCES (SAN BERNARDINO COUNTY)**

34.    Aaron Araiza is a Latino. He has been a male inmate at the West Valley Detention Center ("WVDC") in Rancho Cucamonga, California on multiple occasions in 2015, with the latest custodial term starting September 3, 2015. He is, and for the foreseeable future will be, incarcerated at the San Bernardino County Jail. Mr. Araiza is a transgender person who suffers from one or more psychological disorders. As a means of managing his stress while in custody, he maintains contact with his mother, Plaintiff Hilda Alarid, whose love and support are critical to Mr. Araiza's emotional well-being. Due to the cost of telephone communication, Mr. Araiza is forced to substantially limit his communication with his mother.

35.    Plaintiff, Hilda Alarid, is Mr. Araiza's mother.  She is a Latina.  Mrs. Alarid has directly borne the cost of the charges for phone calls made by Mr. Araiza; therefore, she qualifies as the payor of said fees. Mrs. Alarid is committed to providing love and support to her son, but based on the cost of the telephone calls to the West Valley Detention Center, she substantially limits their frequency. Plaintiff Alarid brings this suit on her own behalf and on behalf of a class of similarly situated persons, defined elsewhere in this Complaint.

**C.    CLASS THREE PLAINTIFFS AND CIRCUMSTANCES (RIVERSIDE COUNTY)**

36.    Todd Kaelin is white. He is currently, and for the foreseeable future will be, incarcerated in the Riverside County Jail. He attempts to stay in close contact with his parents. He feels better on those days that he speaks with his parents. However, due to the cost of each call he makes from jail, his family pays a high price to stay in touch with their son. To save his family money, Mr. Kaelin limits his phone calls.

37.    Louis and Dana Kaelin, Todd's parents, do all they can to speak with their son.  But, because of the cost of each call, whether through GTL, Securus, or

another telecommunications company, they feel like they are constantly depositing more of their money into their son's prepaid phone account.  Mr. and Mrs. Kaelin are retired and live on a fixed income, and the cost of these calls has placed a significant burden upon them. Since Todd's most recent conviction in 2013, Mr. and Mrs. Kaelin have paid many hundreds of dollars to GTL and Securus. Plaintiffs Louis and Dana Kaelin bring this suit on their own behalf and on behalf of a class of similarly situated persons, defined elsewhere in this Complaint.

### D.    CLASS FOUR PLAINTIFFS AND CIRCUMSTANCES (ORANGE COUNTY)

38.    Peter Lee Bohanon is African-American. He was a male inmate at the Orange County Central Jail in Santa Ana, California beginning February, 2015 until and including October 16, 2015.  He is currently in custody in the Los Angeles County Jail at Wayside.

39.    Plaintiff, Qiana Goss, who is also African-American, is Mr. Bohanon's common law wife with whom he has three children. Ms. Goss is on a fixed income, and she directly bore the cost of the charges for phone calls made by Mr. Bohanon; therefore, she qualifies as the payor of said fees. Plaintiff Goss brings this suit on her own behalf and on behalf of a class of similarly situated persons, defined elsewhere in this Complaint.

## VI.    CLASS ACTION FACTUAL ALLEGATIONS

### A.    COMMON FACTUAL ALLEGATIONS – ALL COUNTIES AND CLAIMS

40.    Although the annual commission amounts may vary by County based on the size of the respective County, and although the third party provider may be different, the nature of the contracts between the Counties and the third party phone provider - be it GTL, Securus, or another company - are the same. Each County agrees to an *exclusive* contract with a company to provide pay telephone services from that County's jails and other correctional facilities, resulting in a monopoly for the company that receives the contract. Because these contracts are exclusive to one company, and because inmates are literally a captive market with

no ability to choose another telephone company, there are no competitive market forces to constrain the prices set by the company.[2]

41.     In return for this monopoly power, however, these companies provide kickbacks, masqueraded as "site commissions," to the contracting counties, including those Counties named as Defendants in this case. Indeed, counties often select a company to be the third party phone provider based on which company agrees to pay the highest amount in annual commissions. In order to generate these sizable kickbacks, "[f]amilies of incarcerated individuals often pay significantly more to receive a single 15-minute call from prison than for the basic monthly phone service."[3]  In addition, these companies impose unnecessary and unconscionable fees and charges on accounts used for inmate telephone calls, all of which "inflicts substantial and clear harm on the general public,"[4] including Plaintiffs.

42.     Since each Defendant County's commission contract provides a substantial minimum, guaranteed fee against an identified percentage of the ICS charges (in each case above 50%), after which the telecommunications companies still make a substantial profit, it is obvious that, without the commissions, the charges would be substantially lower, and they bear no reasonable relationship to the actual cost of providing the ICS service.

43.     The Defendant Counties all use their annual commissions as provided by Penal Code §4025(c-d), which states that any money or commission collected by a jail for the use of pay phones primarily used by incarcerated inmates shall be deposited in the Inmate Welfare Fund and used first for the benefit, education and

---

[2] *See In re Rates for Interstate Inmate Calling Servs*. I, 28 FCC Rcd. 14107, 14129 (F.C.C. Sept. 26, 2013).

[3] *Id.*, 28 FCC Rcd. at 14130.

[4] *In re Rates for Interstate Calling Servs*. II, 40, 15929, 15938 (F.C.C. Nov. 21, 2013).

welfare of inmates and, to the extent not needed for that purpose, may be used for the maintenance of county jail facilities.

44.    The demographics of the jail population of each Defendant County's jail are highly disproportionate to the demographics of California as a whole. While Plaintiffs do not currently have statistics on a County-by-County breakdown, there are readily available statistics available on the demographics of the California prison population which, on information and belief, mirrors that of the County jails. While approximately 29% of the California male prison population is African-American, less than 7% of the California population is African American. In 2013, 4.367 % of all African-American males (4,367 out of every 100,000) in California were imprisoned, compared to .922 % (922 out of every hundred thousand) for Latinos, and .488% (488 out of every hundred thousand) for whites. Said another way, African-Americans are imprisoned at almost 10 times the rate of whites, and Latinos are imprisoned at almost twice the rate of whites.

45.    The jail population is similarly disproportionately composed of persons with mental illnesses or drug addiction, both of which qualify as disabilities. A 2006 study by the U.S. Department of Justice found that more than half of all prison and jail inmates have a mental health problem compared with 11 percent of the general population, yet only one in three prison inmates and one in six jail inmates receive any form of mental health treatment. Other data indicate that approximately 20% of incarcerated inmates have a serious mental illness, and 30 to 60 % have substance abuse problems. The percentages increase significantly when including broad-based mental illnesses. For example, 50 percent of males and 75 percent of female inmates in state prisons, and 75 percent of females and 63 percent of male inmates in jails, will experience a mental health problem requiring mental health services in any given year.

**B.**   COMMON FACTUAL ALLEGATIONS – CLASS ONE (LOS ANGELES COUNTY)

46.     On or about November 1, 2011, Los Angeles County entered into a written agreement with Public Communications Services, Inc., a California corporation ("PCS"), to provide ICS telephone services for inmates within the County's jails and probation facilities. PCS is a wholly owned subsidiary of GTL. The term of the agreement, identified as Contract No. 77655, is from November 1, 2011 through October 31, 2016, plus three one-year extensions at the option of Los Angeles County.

47.     Pursuant to said agreement, GTL has agreed to pay, and does pay, the County the greater of $15,000,000 annually (the Minimum Annual Guaranty) or 67.5% of the revenues received for specified charges described within the Contract. In addition GTL has agreed to pay, and does pay, the County's Probation Department the greater of $59,000 annually or 67.5% of the revenues received for specified charges covered by the contract.

48.     Upon information and belief, the County has an additional agreement with AT&T, the details of which, including the annual commission rates, are currently unknown to Plaintiffs, but which generally involve the sale of prepaid direct call phone cards directly to inmates. This is in contrast to the GTL arrangement in which Call Recipients (e.g. inmate counselors, family, associates, counsel, and friends) establish accounts into which they deposit funds that are then applied to calls they accept from inmates. Where inmates do not have enough money in their account to make a call, the GTL arrangement also allows inmates to make collect calls.

49.     Inmates incur a direct cost of approximately $18.00 to purchase one of these AT&T cards. The inmates initiate the calls, subject to similar unreasonable, unjust and grossly excessive rates, with a connection fee and a rate per minute far exceeding the standard rate for local calls, or those of the Los Angeles region. As

with the GTL charges, the charges were unjust, unreasonable and grossly excessive, and the portion of the charges received by the County bore no reasonable relationship to the County's share of the cost of providing the service. Although the costs were not directly charged by the County, the cost to telephone companies of the payments to the County based on its agreement with the foregoing telephone companies was built into the charges, and paid directly to the County by the telephone companies.

50.    At no time did the County's residents vote to approve the foregoing commissions paid by GTL to the County or the rates charged to the inmates and/or Call Recipients pursuant to the County's agreement with GTL.

### C.    COMMON FACTUAL ALLEGATIONS – CLASS TWO (SAN BERNARDINO COUNTY)

51.    Beginning on July 1, 2008 and continuing through on or about June 2, 2015, the County had a written agreement with GTL to provide ICS for the SBCSD. Under the terms of the GTL agreement, the County received 61% of GTL's annual revenue from calls made through the County's ICS, estimated to be $3,000,000 annually.

52.    Effective on or about June 3, 2015, the County entered into a new written agreement for ICS. This agreement is with Securus and is for a term of three years and one month, plus two one-year options to extend. Under the terms of this agreement, the County is to receive a Minimum Annual Guaranty of $4,300,000 for the first year. In years 2-3, the County is to receive either $3,800,000 annually or 81% of Securus' "compensable revenue," whichever is greater, including an additional $300,000 per year for a "Technology Fund."

53.    In addition, upon information and belief, the County also has an agreement with GTL, Securus and/or another third party provider, the details of which are currently unknown to Plaintiffs, but which generally involve the sale of prepaid direct call phone cards directly to inmates. As with the GTL and Securus

17

arrangements, the calling cards have unreasonable, unjust and grossly excessive rates, with a connection fee and a rate per minute far exceeding the standard rate for local calls, or those of the San Bernardino County region.

54.     At no time did the County's residents vote to approve the foregoing commissions paid by GTL or Securus to the County or the rates charged to the inmates and/or Call Recipients pursuant to the County's agreements with GTL or Securus.

D.     **COMMON FACTUAL ALLEGATIONS – CLASS THREE (RIVERSIDE COUNTY)**

55.     For a period of several years and continuing through on or about September 22, 2015, the County had a written agreement with GTL to provide ICS for the RCSD. Pursuant to that agreement, GTL agreed to pay, and did pay, the County a Minimum Annual Guaranty of $2,000,000, adjusted each year based on the number of inmates housed in the County's jails. Plaintiffs are currently unaware of the actual commission amounts that GTL has paid to this County for each year this agreement was in effect.

56.     Effective on or about September 23, 2015, the County began its current agreement for ICS with Securus. This current written agreement is for a term of five years, under which the County receives a Minimum Annual Guaranty of $2,500,000 from Securus, adjusted each year based on the number of inmates in the County's jails.

57.     In addition, upon information and belief, the County also has an agreement with GTL, Securus and/or another third party provider, the details of which are currently unknown to Plaintiffs, but which generally involves the sale of prepaid direct call phone cards directly to inmates. As with the GTL and Securus ICS arrangements, the calling cards have unreasonable, unjust and grossly excessive rates, with a connection fee and a rate per minute far exceeding the standard rate for local calls, or those of the Riverside County region.

58.     At no time did the County's residents vote to approve the foregoing commissions paid by GTL or Securus to the County or the rates charged to the inmates and/or Call Recipients pursuant to the County's agreements with GTL or Securus.

E.     **COMMON FACTUAL ALLEGATIONS – CLASS FOUR (ORANGE COUNTY)**

59.     Beginning in or about 2006 and continuing through March 2, 2015, Orange County had a written agreement with GTL to provide an ICS for the OCSD. Pursuant to that Agreement, GTL agreed to pay, and did pay, the County, the greater of $2,600,000 annually or 54% of GTL's gross revenue from the County's ICS.

60.     The County's current written agreement with GTL became effective on or about March 3, 2015. Under the terms of the current Agreement, GTL pays the County 97% of its annual revenue for intrastate calls with a Minimum Annual Guaranty of $4,350,000. This current agreement is for a term of three years plus seven one-year extensions, each of which must be mutually agreed to by both parties.

61.     In addition, upon information and belief, this County also has an agreement with GTL and/or another third party provider, the details of which are currently unknown to Plaintiffs, but which generally involve the sale of prepaid direct call phone cards directly to inmates. As with the GTL ICS arrangement, the calling cards have unreasonable, unjust and grossly excessive rates, with a connection fee and a rate per minute far exceeding the standard rate for local calls, or those of the Orange County region.

62.     At no time did the County's residents vote to approve the foregoing commissions paid by GTL to the County or the rates charged to the inmates and/or Call Recipients pursuant to the County's agreement with GTL.

## VII.   CLASS DEFINITIONS

63.     Each set of Named Plaintiffs brings this action on their own behalf, and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The primary classes are denominated the General Classes. These classes are defined County by County and apply to all the claims in the case.

64.     Each set of Plaintiffs suing each County constitute a separate class suing that County. Although each set of Plaintiffs suing each County Defendant constitutes a separate class, the common questions of law and fact and the other issues relevant to certifying a class for the General Classes and the Limited Disparate Impact Sub-Classes are addressed together because, in all material respects, they are the same for purposes of class certification.

65.     The Named Plaintiffs are for each Class as follows:

a. Class One (Los Angeles County): Anthony Oliver (former inmate who provided funds to third parties to use for ICS so that he could communicate with them); Star Salazar (wife of Ronny Salazar, who has established a pre-paid ICS account paid for with community property funds).

b. Class Two (San Bernardino County): Hilda Alarid (mother of Aaron Araiza, who has established and paid for a pre-paid ICS account to allow her to communicate with her son).

c. Class Three (Riverside County): Louis and Dana Kaelin (parents of Todd Kaelin who have established and paid for a pre-paid ICS account to allow them to communicate with her son).

d. Class Four (Orange County): Qiana Goss (common law wife of Peter Lee Bohanon, who established a pre-paid ICS account, to allow her to communicate with her common law husband).

66.     At times in this complaint the Class Named Plaintiffs may be referred to collectively by that title, or referred to by that title in conjunction with the particular county they are suing.

67.     Additionally, at times in this complaint, the Named Plaintiffs who were or are inmates may be referred to collectively as the "Named Inmate Plaintiffs", and the Named Plaintiffs who were or are Call Recipients may be referred to collectively as the "Named Call Recipient Plaintiffs."

68.     Also, the Class Members who qualify as Call Recipients at times may be referred to collectively as "Call Recipient Class Members," and the Class Members who qualify as Inmates at times may be referred to collectively as "Inmate Class Members."

A.     COUNTY BY COUNTY GENERAL CLASSES DEFINED

69.     Each of the first four proposed classes – referred to as General Classes – is generally defined as those individuals or entities that qualify as either a) an inmate to allow communications with whom a third party ICS account was in the past or present, or in the future will be, established or b) a Call Recipient, i.e., inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or present has established, or will in the future establish, a pre-paid ICS account with a telecommunications company that has contracted with the County for which that Plaintiff is a class representative to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in that County's Jail facilities are paid, and out of which collected funds the Defendant County is paid commissions pursuant to its contract with the telecommunications company. Below, each individual General Class is defined on a County by County basis.

70.     General Class One (Los Angeles County) is defined as those individuals or entities that qualify as either a) a past or present Los Angeles County

Jail inmate to allow communications with whom a third party ICS account was in the past or present, or in the future will be, established, or b) a Call Recipient, i.e., inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or present has established, or will in the future establish, a pre-paid ICS account with a telecommunications company (currently GTL) that has contracted with Los Angeles County to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any Los Angeles County Jail Facility are paid, and out of which collected funds Los Angeles County is paid commissions pursuant to its contract with the telecommunications company.

71.    General Class Two (San Bernardino County) is defined as those individuals or entities that qualify as either a) a past or present San Bernardino County Jail inmate to allow communications with whom a third party ICS account was in the past or present, or in the future will be, established, or b) a Call Recipient, i.e., inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or present has established, or will in the future establish, a pre-paid account with a telecommunications company (at different times GTL or Securus) that has contracted with San Bernardino County to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any San Bernardino County Jail Facility are paid, and out of which collected funds San Bernardino County is paid commissions pursuant to its contract with the telecommunications company.

72.    General Class Three (Riverside County) is defined as those individuals or entities that qualify as either a) a past or present Riverside County Jail inmate to allow communications with whom a third party ICS account was in the past or present, or in the future will be, established, or b) a Call Recipient, i.e., inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or

present has established, or will in the future establish, a pre-paid account with a telecommunications company (at different times GTL or Securus) that has contracted with Riverside County to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any Riverside County Jail Facility are paid, and out of which collected funds Riverside County is paid commissions pursuant to its contract with the telecommunications company.

73.     General Class Four (Orange County) is defined as those individuals or entities that qualify as either a) a past or present Orange County Jail inmate to allow communications with whom a third party ICS account was in the past or present, or in the future will be, established, or b) a Call Recipient, i.e., inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or present has established, or will in the future establish, a pre-paid account with a telecommunications company (currently GTL) that has contracted with Orange County to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any Orange County Jail Facility are paid, and out of which collected funds Orange County is paid commissions pursuant to its contract with the telecommunications company.

## VIII.  COMPLIANCE WITH RULE 23 REQUIREMENTS DEFINITIONS

### A.     NUMEROSITY

74.     Because California is such a large state, many of its jail systems are large compared to the average jail system in the United States.

75.     Los Angeles County has the largest jail population in the United States, numbering over 17,000 inmates.

76.     San Bernardino's jail population is over 5000 inmates.

77.     Riverside County's jail population is just under 4000.

23

78.     Orange County's jail population is over 5000 inmates.

79.     All four of these jails are ranked among the 50 largest jail populations in the country. http://www.npr.org/templates/story/story.php?storyId=122336311.

80.     Average jail turnover rate in US jails is 15 times per year. http://apps.fcc.gov/ecfs/document/view;NEWECFSSESSION=KnsqVy1h8yKTrl2 gyF3g621nyZNJN2nJpXX6DFxznyXyXnh8LJhT!1736751079!-973180750?id=60001115155

81.     While the turnover rate is smaller in large jails, the jail population turns over several times per year in large jails. For example, Los Angeles County, the largest jail, has reported in past cases a turnover rate of eight or nine per year. Assuming a turnover rate of eight, all of the Defendant County jails each have well over 20,000 individual inmates in a given year.

82.     Even assuming that only a small fraction of inmates and their families avail themselves of prepaid ICS accounts, on information and belief, each class for each County numbers in the thousands.

**B.     COMMON ISSUES OF FACT OR LAW**

83.     In this case, although there are County by County classes, the issues are identical for each class. Each County Defendant has a contract with a telecommunications company, the terms of which provide a minimum annual payment against a percentage that goes to the County Jail for the exclusive right to provide pre-paid Call Recipient phone accounts to receive inmate calls.

84.     The common issues of fact or law applicable to each class include:

a.  Are the charges pursuant to which each Defendant County receives funds in exchange for the exclusive right of pre-paid Call Recipient call accounts (hereafter "Contract Funds") unjust or unreasonable within the meaning of the Federal Commutations Act ("FCA")?

b. Does the contract pursuant to which each Defendant County receives Contract Funds render the County vulnerable to suit under the FCA?

c. Do the rates established by the FCC for ICS interstate and intrastate calls apply retroactively?

d. If, or to the extent that, the FCC rates do not apply retroactively, are the charges for that period still vulnerable to suit under the FCA as unjust and unreasonable?

e. Are the charges pursuant to which the Defendant Counties receive Contract Funds so excessive, arbitrary and/or unreasonable as to deprive or limit Class Members' ability to reasonably communicate between Inmate Class Members and their families and loved ones who are Call Recipient Class Members in violation of the First Amendment and/or Due Process clauses of the United States Constitution?

f. Are the charges pursuant to which the Defendant Counties receive Contract Funds so excessive, arbitrary and/or unreasonable as to deprive or limit Class Members' of due process by virtue of their disproportionate relationship to the reasonable cost to the Defendant Counties of ICS usage?

g. Are the charges pursuant to which the Defendant Counties receive Contract Funds so excessive, arbitrary and/or unreasonable as to place unconstitutional conditions on Class Members' exercise of their First Amendment rights and/or constitute an unlawful taking in violation of Federal due process and unlawful takings clauses?

h.  Are presumed damages available to Plaintiffs and the Class Members for their non-economic damages for violation of the federal rights asserted in the complaint?

85.     While there are additional common issues, these issues alone more than establish that there are common issues.

## C.  TYPICALITY

86.     In accordance with F.R. Civ. P. Rule 23(a), the claims of the Named Plaintiffs are typical of each class for which they are named as a class representative. All Named Plaintiffs were either in the custody of the applicable County Jail when they were subjected to the unlawful conduct alleged in the Complaint, which unlawful conduct applied and applies to all inmates in the applicable County Jail, who established, or whose family or other associates established, an ICS pre-paid account through Call Recipients, or established a pre-paid ICS account with the applicable County Jail in order to be able to communicate with an inmate housed in the applicable County Jail, and were accordingly subjected to the unlawful conduct alleged in the Complaint, which unlawful conduct applied and applies to all Call Recipients who established an ICS pre-paid account through Call Recipients.

87.     The Call Recipient Named Plaintiffs have the same interests, and have suffered the same type of damages as inmates with whom they were communicating, in the deprivation of their ability to communicate with loved ones, and payment of the unlawful charges at issue in this case. Named Plaintiffs' claims for the classes alleged in this Complaint are based upon the same or similar legal theories as the claims of the Class Members. Each class member of the respective classes alleged herein suffered actual damages as a result of the actions of each Defendant applicable to that class. The actual damages suffered by Plaintiffs are similar in type and amount to the actual damages suffered by each class member.

88.     The economic losses suffered by each class member are commonly determined by the amount paid by that class member for the ICS charges paid by or on behalf of that class member, plus interest to be determined.

**D.     ADEQUACY OF REPRESENTATION**

89.     In accordance with F.R. Civ. P. Rule 23(a), the Named Plaintiffs will fairly and adequately protect the interests of the class. The interests of the Named Plaintiffs are consistent with and not antagonistic to the interests of each class.

90.     Similarly, class counsel are experienced class action litigators who will fairly and adequately protect the interests of each class.

**E.     PREDOMINANCE AND SUPERIORITY**

91.     In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

92.     In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

93.     In accordance with Fed.R.Civ.P. Rule 23(b)(2), Plaintiffs are informed and believe, and thereon allege that Defendants have acted on grounds generally applicable to the class.

94.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. The interests of Class Members in individually controlling the

27

prosecution of a separate action is low in that most Class Members would be unable to individually prosecute any action at all. The amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them on an individual basis. It is desirable to concentrate all litigation in one forum because all of the claims, although arising within different counties within the Central District, arise out of the same basic pattern of conduct, the legality of which is subject to class wide determination. It will promote judicial efficiency to resolve the common questions of law and fact in one forum rather than in multiple courts. Because the unlawful conduct alleged herein is systemic, it is particularly well suited to resolution on a class basis, as the critical questions in the case may be answered on a class wide basis. Indeed, in this case, there are no individualized issues at all regarding liability. Either the charges are lawful under the legal theories implicated by this Complaint or they are not.

95.     The claims raised herein are susceptible to common proof. Each Defendant County has a contract under which it receives a minimum fee against a percentage of certain proceeds in exchange for its grant of exclusive ICS rights. The phone charges and related fees that Class Members pay are uniform across each set of Class Members, and are discoverable from the contracted telecommunications company computerized records. The race and ethnicity of Class Members for the disparate impact claims are discoverable from jail and phone records, either because they directly contain such information or because they can be determined from statistical analyses based on those records (including from census information based on addresses).

96.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised on behalf of the classes. The class action will be manageable because

computerized records systems exist from which to ascertain the members of the class and to ascertain some of the proof relevant to Plaintiffs' claims. Liability can be determined on a class-wide basis based on class wide evidence because the Plaintiffs complain of systemic and widespread policies and practices that are uniform for each Defendant County, based on their particular contract with the relevant telecommunications company. Named Plaintiffs and the Class Members are entitled to economic damages under federal law, and to such other damages as may be determined by the Court or the trier of facts; and, in any event, individualization or variability in damages is not a bar to a liability certification based on common liability issues.

97.     Plaintiffs do not know the identities of the Class Members. The identities of the Class Members are ascertainable from a combination of the applicable County Jail and the applicable County's contracted telecommunications company records. Plaintiffs are informed and believe, and thereon allege, that the foregoing computer records reflect the identities, including addresses and telephone numbers, of the persons who qualify as Class Members, and the charges incurred, and that it is possible to ascertain from those records who qualifies as a class member of each class.

98.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), Class Members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that the telecommunications company computer records and County Jail records for each Defendant County contain a current or last known address for Class Members, as well as the billing information pertinent to each class member.

## IX.    APPROPRIATENESS OF EQUITABLE RELIEF

99.    Inmate Plaintiffs and Class Members currently incarcerated, and Call Recipient Plaintiffs with current and operating ICS accounts, are and will continue to be, subject to the unlawful ICS phone charges addressed in this Complaint.

100.    The County Defendants' continuing violations of law under applicable United States constitutional and statutory provisions causes Plaintiffs and Class Members continuing, sweeping and irreparable harm.

101.    Because no adequate remedy at law exists for the injuries alleged herein, Plaintiffs seek injunctive relief under federal law, including restitution in amounts to be determined at trial based on the unlawful payments plus interest.

## X.    DAMAGES

102.    As a result of each Defendant's unlawful conduct, Plaintiffs and Class Members have suffered, and will continue to suffer, compensable damages in amounts to be determined at trial, including economic, physical and emotional distress damages, in amounts according to proof at trial. The economic damages and/or refund/restitution/disgorgement are susceptible to class wide proof based on the computerized records of the applicable telecommunications company, the applicable County Jail, and the applicable documents and records memorializing and documenting the ICS charges complained of herein.

103.    Plaintiffs and the class members are entitled to presumed damages under federal law.

104.    The County Defendants acted maliciously, fraudulently or oppressively, and in reckless disregard of the Plaintiffs' and Class Members' rights, thereby entitling them to an award of punitive damages from all Defendants except the County Defendants or any governmental entity.

## XI.    CLAIMS

A.    FEDERAL COMMUNICATIONS ACT (47 U.S.C. § 201(B) ET SEQ.) [BY CLASS ONE PLAINTIFFS AGAINST LOS ANGELES COUNTY DEFENDANTS, BY CLASS TWO PLAINTIFFS AGAINST SAN

BERNARDINO COUNTY DEFENDANTS, BY CLASS THREE PLAINTIFFS
AGAINST RIVERSIDE COUNTY DEFENDANTS, AND BY CLASS FOUR
PLAINTIFFS AGAINST ORANGE COUNTY DEFENDANTS]

105.   Plaintiffs incorporate all previous and subsequent paragraphs of this Complaint into this claim.

106.   Because, while the parties differ for each class, each County Defendant engages in essentially the same unlawful conduct, the allegations are framed as against the County Defendants as a group in order to avoid the unnecessary duplication of the identical language for each Defendant's conduct.

107.   County Defendants' practices complained of herein constitute unjust and unreasonable charges and practices in connection with communication services and, therefore, violate §201(b) of the FCA.

108.   Although the Defendant Counties are not themselves common carriers or telecommunications companies, they have acted in concert with the telecommunications companies and/or common carriers identified in this Complaint in providing interstate and intrastate communications services, and in setting, charging and collecting rates for the communications at issue in this lawsuit that are unjust and unreasonable. As the FCC has determined, "where site commission payments exist, they are a significant factor contributing to high rates."[5]

109.   Accordingly, the County Defendants are engaged in interstate wireless communications for the purpose of furnishing communication services within the meaning of §201(a) of the Federal Communications Act ("FCA"), 47 U.S.C. §201, et seq. Without the agreement and active participation of the County Defendants, the communications at issue in this lawsuit would not have occurred, and the rates charged would have been substantially lower since a majority of the funds

---

[5] *See In re Rates for Interstate Inmate Calling Servs.* I, ¶34.

1    resulting from the charge go, in each Defendant County's case, to the County in

2    the form of a commission.

3       110.    On information and belief, the rates at issue in this lawsuit were never

4    approved by the FCC. Even if the rates were filed with the FCC, albeit not

5    approved, the FCC concluded, in September 2013 and November 2013, that the

6    interstate rates being charged by ICS providers such as GTL and Securus were

7    presumptively unjust and unreasonable, and "greatly exceed[ed] the cost of

8    providing [the] service, in direct violation of the requirements of Sections 201 and

9    276 of the FCA that those rates be just, reasonable, and fair."[6] Then, in October

10    2015, the FCC concluded that the intrastate rates being charged by ICS providers

11    were likewise presumptively unjust and unreasonable in direct violation of the

12    requirements of Sections 201 and 276 of the FCA. Regardless of when the FCC

13    ruled, or when their rates officially go into effect, the rates are unlawful in that they

14    violate Sections 201 and 276 of the FCA.

15       111.    As a direct and proximate result of Defendants' violations, Plaintiffs

16    and the Class Members have been damaged in amounts to be determined at trial.

17       112.    As a direct and proximate result of Defendants' violations, Plaintiffs

18    and the Class Members are entitled to injunctive relief, including restitution in

19    amounts to be determined at trial based on the unlawful payments plus interest.

20     **B.**      **VIOLATIONS OF 42 U.S.C. §1983 [BY CLASS ONE PLAINTIFFS**
21           **AGAINST LOS ANGELES COUNTY DEFENDANTS, BY CLASS TWO**
22           **PLAINTIFFS AGAINST SAN BERNARDINO COUNTY DEFENDANTS, BY**
            **CLASS THREE PLAINTIFFS AGAINST RIVERSIDE COUNTY**
23           **DEFENDANTS, AND BY CLASS FOUR PLAINTIFFS AGAINST ORANGE**
24           **COUNTY DEFENDANTS]**

25       113.    Plaintiffs incorporate all previous and subsequent paragraphs of this

26    Complaint into this claim.

27    _____

28    [6] *Securus Techs., Inc. v. Federal Communications Commission*, No. 13-1280, Doc.
No. 1470786, p. 1 (D.C. Cir. filed Dec. 16, 2013).

114.   The Defendant Counties are local government entities susceptible to suit under 42 U.S.C. §1983. All of the conduct alleged herein was done under color of state law, pursuant to a governmental policy, custom or practice. Each of the contracts alleged herein was approved by, and entered into under the authority of, the relevant County Board of Supervisors.

115.   The conduct alleged herein violates and unduly burdens the Class Members rights of association and meaningful personal communication with family, friends, associates and other Call Recipients in violation of the First Amendment to the United States Constitution.

116.   The conduct alleged herein violates the Fifth Amendment to the United States Constitution. Both Call Recipients and Inmate Plaintiffs' and Class Members' First Amendment right to communicate with loved ones, family, friends and associates who are incarcerated is unconstitutionally conditioned on ICS payments that bear no reasonable nexus or rough proportionality to the required payments and the cost to, or burden or effect on, the Defendant Counties by allowing the provision of such calls. Plaintiffs' and Class Members' rights to due process of law were unlawfully abridged, as explained above, and their rights to equal protection of the laws were denied in that the conduct complained of herein was arbitrary and capricious.

117.   ICS charges are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to control inmates' access to the outside world, and therefore government entities can pressure and coerce Class Members into paying hugely disproportionate and unreasonable phone charges in order to be able to communicate with loved ones and others herein referred to as Call Recipients.

118.   Even if the Defendants could deny inmate phone calls altogether, that is not what has occurred. Once ICS phone calls are allowed, it cannot condition that benefit by infringing and burdening First Amendment rights unless Plaintiffs

1   and Class Members pay funds that are unreasonable and substantially

2   disproportionate to the cost to, or burden or effect on, the Defendant Counties for

3   allowing ICS calls.

4       119.   Accordingly, Defendants' actions violate Plaintiffs' and Class

5   Members' First Amendment rights, and/or place unconstitutional conditions on

6   their exercise, thereby violating the Fifth Amendment's prohibition on

7   unconstitutional conditions and taking private property without just compensation.

8       120.   As a direct and proximate result of Defendants' violations, Plaintiffs

9   and the Class Members have been damaged in amounts to be determined at trial.

10       121.   As a direct and proximate result of Defendants' violations, Plaintiffs

11   and the Class Members are entitled to injunctive relief, including restitution, in

12   amounts to be determined at trial based on the unlawful payments plus interest.

13   **XII.   PRAYER FOR RELIEF**

14       WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members

15   they represent, request monetary and injunctive relief against each defendant as

16   follows:

17       122.    General and special damages according to proof;

18       123.   A refund/disgorgement/restitution of the monies paid by Class

19   Members that, in turn, were used to pay the contracted commissions to each

20   County Defendant the amounts contracted for in connection with the inmate calling

21   agreements of each with telecommunications companies.

22       124.   Economic, physical and emotional distress damages (in addition to the

23   damages sought in the preceding paragraph, or to the extent not covered or

24   awarded pursuant to that paragraph), and physical and emotional distress and other

25   damages according to proof.

26       125.   Temporary, preliminary and permanent injunctive relief prohibiting

27   Defendants from continuing to engage in the unlawful practices complained of

28

1  herein and requiring refund/disgorgement/restitution of the monies paid by Class

2  Members as a form of equitable relief;

3       126. Class wide presumed damages for non-economic damages;  f127.

4  Attorneys' fees and costs under 47 U.S.C. §206 and 42 U.S.C. §1988; and

5       128.  Grant any other relief that this Court may deem fit and proper

6  DATED: February 16, 2015         Respectfully Submitted,

7
8                   KAYE, MCLANE, BEDNARSKI & LITT, LLP
                 RAPKIN & ASSOCIATES, LLP

9
10               By:__/s/ Barrett S. Litt_____

11                   Barrett S. Litt
                 Attorneys for Plaintiffs

12

13

14  **DEMAND FOR JURY TRIAL**

15       Plaintiffs, on behalf of themselves individually and on behalf of each Class,

16  demand a jury trial to the extent available under applicable law.

17  DATED: February 16, 2015       Respectfully Submitted,

18
19                   KAYE, MCLANE, BEDNARSKI & LITT LLP
                 RAPKIN & ASSOCIATES, LLP

20
21               By:__/s/ Barrett S. Litt_____

22                   Barrett S. Litt
                 Attorneys for Plaintiffs

23

24

25

26

27

28